IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GRET PLAINS CONSTRUCTION, LLC )<br>24225 North Council Road )<br>Edmond, Oklahoma 73025 )<br> )<br>and )<br> )<br>BITCO GENERAL INSURANCE CORP. )<br>3700 Market Square Circle )<br>Davenport, Iowa 52807 )<br> )<br>      Plaintiffs, )<br> )<br>vs. )<br> )<br>NAUTILUS INSURANCE COMPANY )<br>7233 East Butherus Drive )<br>Scottsdale, Arizona 85260 )<br> )<br>SERVE: Oklahoma Insurance )<br>    Department )<br>    400 NE 50th Street )<br>    Oklahoma City, OK 73105 )<br> )<br>      Defendant. | Civil Action No. _____ |

COMPLAINT

For their Complaint against Defendant Nautilus Insurance Co. ("Nautilus"), Plaintiffs Great Plains Construction, LLC ("Great Plains"), and BITCO General Insurance Corporation ("BITCO") state:

I. JURISDICTION AND VENUE.

  1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. As shown in this section, there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and

interest. The Court may properly exercise personal jurisdiction over Nautilus. Venue is properly laid in this Court.

2. Great Plains is a limited liability company in good standing solely incorporated and domiciled in the state of Oklahoma. Great Plains' sole principal place of business is located in the state of Oklahoma. All of Great Plains' members are individuals solely domiciled in the state of Oklahoma.

3. BITCO is a corporation solely incorporated and domiciled in the state of Iowa that is authorized to issue insurance policies in the state of Oklahoma. BITCO's sole principal place of business is located in the state of Iowa.

4. Nautilus is a corporation solely incorporated and domiciled in the state of Arizona that issues insurance policies in the state of Oklahoma. Nautilus' sole principal place of business is located in the state of Arizona. Nautilus may be served by delivering a copy of this Complaint and the summons in this action to the Oklahoma Insurance Department pursuant to 36 O.S. § 1103.

5. As set forth below, the amount in controversy exceeds $75,000 exclusive of costs and interest because the actual damages claimed in the underlying action exceed that sum.

6. The Court may properly exercise personal jurisdiction over Nautilus under 12 O.S. § 2004 because this action arises from a contract issued by Nautilus insuring a risk located in Oklahoma and a breach of that contract by Nautilus in the state of Oklahoma.

7. Venue is properly laid in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

II. ALLEGATIONS GIVING RISE TO THIS ACTION.

    a. THE PENDARVIS LAWSUIT.

8. On January 12, 2023, Aaron Pendarvis filed a lawsuit against OneOK Field Services Co., LLC, ONEOK, Inc., and Great Plains in District Court of Oklahoma County, Oklahoma ("the Pendarvis lawsuit"). A copy of the Petition in the Pendarvis lawsuit ("the Pendarvis Petition") is attached as Exhibit 1 to this Complaint.

9. The Pendarvis Petition alleges that Mr. Pendarvis sustained injuries in an incident on December 9, 2021, at a pipeline owned by ONEOK "approximately ½ mile south of the intersection of southwest [sic] 15th and Richland in the city of Yukon, in the state of Oklahoma."

10. The Pendarvis Petition alleges that Mr. Pendarvis, an employee of Blue Water EnviroLining, was injured by a flash fire resulting from the ignition of a combustible substance being emitted from a hole at the work site. According to the Petition, the flash fire occurred after "someone from ONEOK, ONEOK Field Services and/or Great Plains lit some form of paper on fire and threw it in the hole where Pendarvis was." Use of this method to check for the presence of residual condensate is a routine practice. Pendarvis alleges that he sustained "serious injuries" as a result of the flash fire that are alleged to be "in excess of $75,000."

11. The Pendarvis Petition alleges that Great Plains "failed to act as a reasonably careful company and therefore was negligent" in multiple respects including negligent hiring, failure to supervise, failure to train, exposing Pendarvis to a dangerous condition and failure to designate precautions. The Pendarvis lawsuit also alleges that Great Plains was negligent per se due to alleged violations of various federal or state occupational safety regulations.

12. Great Plains and BITCO dispute these allegations and Great Plains' liability but they form the basis for analysis of the obligations of Great Plains' insurers to provide Great Plains with a defense and indemnification. Investigation of the incident reveals that the crew on the scene was using a "pig" to clean the pipe. The condensate and gas coming out of the pipe flowed into a catch basin, which then was placed in a vacuum truck for removal. The waste material flowed out at a faster than anticipated rate and overflowed before the "pig" could be stopped. Use of a burning paper to check for the presence of residual condensate is a routine and customary practice among work crews.

    b.    GREAT PLAINS' INSURANCE COVERAGE.

13. At the time of the events alleged in the Pendarvis lawsuit, Great Plains had two lines of liability insurance available, a general liability policy with BITCO and a pollution policy with Nautilus.

14. BITCO provided a primary general liability policy, CLP 3705893 ("the BITCO primary policy"), with limits of $1,000,000 per occurrence and an umbrella policy, CUP 2820228 ("the BITCO umbrella policy") with limits of $5,000,000. The

BITCO general liability policy contained a "total pollution exclusion" on form CG 21 55 excluding all coverage for "'bodily injury' . . . which would not have occurred in whole or part but for the actual . . . release or escape of 'pollutants.'" The definition of "pollutants" in the BITCO primary policy reads:

> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. The BITCO umbrella policy did not contain a "total pollution exclusion." It provided coverage and a defense for "occurrences" causing "bodily injury" as defined in that policy. The BITCO umbrella policy also was excess coverage:

> This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or on any other basis, except other insurance specifically written to be excess over this insurance.

16. Nautilus provided a second line of coverage via a Contractors Pollution Liability policy CPL2034825-10 with limits of $10,000,000 per claim. In pertinent part, its policy read as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage in excess of the deductible or self insured retention, if any, resulting from pollution conditions to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages to which this insurance does not apply. We may, at our discretion, investigate any pollution conditions and settle any claim or suit that may result. ...

The Nautilus policy contains the following definitions:

> Pollutant(s) means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals,

and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Pollution Conditions means the discharge, dispersal, release, seepage, migration, or escape of pollutants.

c.     GREAT PLAINS TENDERS THE PENDARVIS SUIT TO ITS INSURERS.

17.     Great Plains tendered the Pendarvis lawsuit to BITCO and Nautilus promptly after being served.

18.     In response, BITCO advised Great Plains that there was no coverage for the Pendarvis lawsuit under the BITCO general liability policy because of its pollution exclusion.  However, BITCO agreed to provide a defense to Great Plains under the BITCO umbrella policy subject to a reservation of rights because of Nautilus's wrongful denial of coverage.

19.     Nautilus denied coverage.  On February 24, 2023, Nautilus sent a denial letter to Great Plains, a copy of which is attached to this Complaint as Exhibit 2. The letter states in part:

> Based on the information received to date, it appears that Great Plains Construction, LLC ("GPC") was working on a project to retire a portion of pipe that was part of a natural gas pipeline. Work included cleaning out the pipe to remove waste material contained therein, including condensate and residual natural gas. The waste material is pushed out of the pipe, collects in a ditch, and is removed for disposal. Periodically, a lit piece of cardboard was thrown into the ditch to test whether waste material remained in the ditch. On December 9, 2021, a lit piece of cardboard was thrown into the ditch causing a flash fire in the ditch area, resulting in a burn injury to one or more workers in the vicinity of the ditch, including Aaron Pendarvis.

20.     The letter continues:

> Plaintiff alleges that someone from OneOK and/or GPC lit some form of paper on fire and threw it into the hole, causing the combustible substance within

>   the hole to catch fire, resulting in Plaintiff's exposure to fire. The flash fire allegedly burned Plaintiff, causing Plaintiff to suffer serious injuries. The Plaintiff alleges injuries caused by exposure to a flash fire. Since Plaintiff's injuries were allegedly caused by exposure to fire and fire is not a pollutant, as the term is defined under the policy, there is no coverage for this matter. Accordingly, Nautilus denies coverage based on the terms of the insuring agreement and the definitions of pollution condition and pollutant(s).

The fuel for the fire was "the waste material [removed from the pipe], including condensate and residual natural gas."

21. Nautilus' denial of coverage reserved its rights as to whether the incident in the Pendarvis lawsuit constituted a covered "occurrence." Nautilus also reserved its rights with respect to an exclusion based on or arising from "the insured's dishonest, fraudulent, malicious, or knowingly wrongful act, error or omission or non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body."

21. Nautilus' February 24, 2023, letter conceded that the Pendarvis lawsuit alleged negligence per se. Despite this concession, Nautilus denied coverage.

22. Nautilus stood on its denial despite a request from BITCO to reconsider dated October 2, 2023. On February 3, 2025, counsel for Nautilus sent the letter attached hereto as Exhibit B reiterating Nautilus' denial of coverage.

23. Nautilus' February 3, 2025, letter again stated that the material on which the crew including Aaron Pendarvis was working was waste:

>   Based on the information known to date, GPC was working on a project to retire a portion of pipe that was part of a natural gas pipeline. Work included cleaning out the pipe to remove waste material contained inside, including

condensate and residual natural gas. The waste material was pushed out of the pipe, collected in a ditch, and later removed for disposal. Periodically, a lit piece of cardboard was thrown into the ditch to test whether waste material remained in the ditch. On December 9, 2021, a lit piece of cardboard was thrown into the ditch causing a flash fire in the ditch area, resulting in a burn injury to one or more workers in the vicinity of the ditch, including Aaron Pendarvis.

24.    Nautilus' February 3, 2025, letter also states:

Plaintiff further contends that, on the date of the incident, he and a GPC employee were working in the hole and the exposed pipeline was emitting combustible substances prior to his injuries. Plaintiff alleges that GPC did not designate precautions to be followed before work began on the hole. A flash fire occurred due to a fire thrown into the hole coming into contact with the combustible substance.

25.    After setting forth the same policy provisions on which Nautilus previously relied, Nautilus again asserted that Mr. Pendarvis' injuries did not result from a pollution incident.  In this section of the letter, ignoring the presence of the condensate it previously discussed and its previous description of the material removed from the pipe as "waste," Nautilus contended that natural gas is "not generally considered a pollutant" so its release did not constitute a "pollution incident."

26.    Remarkably, although the fuel for the flash fire that burned Aaron Pendarvis was the waste condensate and natural gas that had been removed from the pipe, Nautilus' February 3, 2025, letter stated:

Plaintiff's injury was not caused by natural gas, but rather by the heat and flames from the flash fire that burned Plaintiff. Further, the flash fire was not caused by the natural gas, but by the act of tossing a lit piece of cardboard into the hole which ignited the gas.

27. From there, the February 3, 2025, denial letter, citing Oklahoma law, states, "[n]egligent conduct that, although voluntary, produced an unexpected result will be deemed an 'accident.'" Having so stated and also stated that the parties involved did not intend to injure Mr. Pendarvis, Nautilus denied coverage on the ground that the unexpected quantity of waste condensate and natural gas was such that the incident was not a covered "occurrence."

28. Finally, although Nautilus' February 3, 2025 letter concedes that the Pendarvis petition makes claims of negligence and negligence per se, it invoked an exclusion for fraudulent, malicious, or knowingly wrongful conduct as a basis for denying coverage.

III.   CAUSES OF ACTION.

    a.   DECLARATORY JUDGMENT – BOTH PLAINTIFFS.

29. Plaintiffs incorporate paragraphs 1-28 of this Complaint as though fully set forth herein.

30. A live and immediate controversy exists between Plaintiffs and Nautilus as to whether Nautilus owes a duty to defend Great Plains in the Pendarvis suit that is not the subject of any other proceeding.

31. Under Oklahoma law, an insurer must defend its insured if the pleadings or the fruit of a reasonable investigation reveal any potential for coverage under the policy.

32. As both letters from Nautilus concede, the material that caused the fire was waste consisting of condensate and natural gas. This material allegedly was

combustible and therefore was a pollutant within the meaning of the Nautilus policy.

33. Because the waste pollutant escaped and allegedly caught fire causing Mr. Pendarvis' alleged injuries, his alleged bodily injury was the result of a "pollution condition" as defined in the Nautilus policy.

34. The Pendarvis petition alleges that the flash fire was an unexpected and unintended result of the activities at the site. It therefore was an "accident" within the meaning of the Nautilus policy.

35. Properly construed, the exclusion for fraudulent, malicious, or knowingly wrongful conduct does not apply to this matter and does not eliminate Nautilus' duty to defend or indemnify Great Plains in the Pendarvis lawsuit.

36. Further, the Nautilus pollution policy was purchased to provide primary coverage for Great Plains due to the exclusion of pollution coverage in the BITCO general liability policy. By its terms, it was not "specifically written to be excess over [the BITCO policy]." It therefore is primary coverage and obligated to defend Great Plains in the Pendarvis lawsuit.

37. Plaintiffs are entitled to have this Court make the declarations sought in paragraphs 32-36 of this Complaint and further to declarations that Nautilus had the primary obligation to defend Great Plains in the Pendarvis lawsuit but breach its obligations by declining coverage.

b. BREACH OF CONTRACT – BOTH PLAINTIFFS.

38. Plaintiffs incorporate paragraphs 1-37 of this Complaint as though fully set forth.

39. By declining coverage and refusing to defend Great Plains in the Pendarvis lawsuit, Nautilus breached its contract as the direct and proximate result of which each Plaintiff has sustained damages in a total amount exceeding the minimum jurisdictional limits of this Court. Because defense costs are being incurred on an ongoing basis, these damages will increase.

40. By making payments, BITCO is subrogated to the rights of Great Plains to the extent of its payments.

41. Plaintiffs have been compelled to retain counsel to vindicate their rights and are entitled to recover attorney's fees.

WHEREFORE, Plaintiffs pray for the declarations set forth in this Complaint, compensatory and consequential damages, attorney's fees, costs and all other and further relief to which they are entitled.

    Respectfully submitted,

    */s/ Thomas B. Alleman*
    Thomas B. Alleman (WDOK25-12)
    DYKEMA GOSSETT PLLC
    1717 Main, Suite 4200
    Dallas, Texas 75201
    214.698.7830 phone
    855.216.6218 fax
    talleman@dykema.com

    ATTORNEYS FOR BITCO GENERAL INSURANCE CORP.

    and

                        Jerrick L. Irby, OBA No. 30876
                        Robert Fitz-Patrick, OBA No. 14713
                        HALL, ESTILL, HARDWICK, GABLE,
                        GOLDEN & NELSON, P.C.
                        521 East 2nd Street, Suite 1200
                        Tulsa, OK 74120
                        Telephone: (918) 594-0400
                        Facsimile: (918) 594-0505
                        jirby@hallestill.com
                        rfitzpatrick@hallestill.com

                        ATTORNEYS FOR DEFENDANT,
                        GREAT PLAINS CONSTRUCTION, LLC